UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AJAYKUMAR MAGANBHAI PATEL, §<br>*Plaintiff*, §<br>§<br>v. §<br>§<br>NANCY A. BERRYHILL, §<br>Acting Commissioner of the §<br>Social Security Administration, §<br>*Defendant*. § | CIVIL ACTION NO. 4:16-CV-02066 |

**MEMORANDUM AND OPINION**

Plaintiff Ajaykumar Maganbhaui Patel filed this case under the Social Security Act, 42 U.S.C. 405(g) for review of the Commissioner's final decision denying his application for social security disability benefits. Dkt. 14. Both parties consented to magistrate judge jurisdiction. Dkt. 12. Patel and the Commissioner moved for summary judgment. Dkt. Nos. 13, 15. After reviewing the record and the law, Patel's motion is granted, the Commissioner's motion is denied, and the case remanded for further administrative proceedings.

**Background**

Patel filed claims for disability insurance benefits on June 6, 2013, alleging disability beginning April 10, 2013. Patel is over 50 years old, with a high school education, and last worked as an assistant manager in retail sales. His claim was denied on initial review, so he requested a hearing before an administrative law judge, which was held on September 10, 2014.

The ALJ denied the claim on November 25, 2014. Specifically, the ALJ found at step 2 of the required sequential analysis (20 C.F.R. § 404.1520) that Patel had no severe

mental impairments, but did have other medically determinable impairments that were severe --- status post liver transplant, diabetes mellitus with kidney complications and neurological complications, mild lumbar scoliosis and osteophytes and chronic kidney disease. At step 3 the ALJ found that none of these impairments met or medically equaled any of the Agency's listed impairments. Dkt. 7-3.

The ALJ rated Patel's residual functional capacity (RFC) as "light work", with the following exertional limitations: cannot climb ladders, ropes, or scaffolds; cannot work around hazards such as unprotected heights, open waters or fires, dangerous or moving machinery; can occasionally stoop, squat, kneel, crawl, bend, and crouch. Based on this RFC the ALJ concluded that Patel could perform his past relevant work (step 4), and denied disability status on that basis. The ALJ made no alternate step 5 findings nor did the vocational expert testify to other work Patel could perform. Dkt. 7-3, at 24.

The Appeals Council denied Patel's request for review. Patel then filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g).

## Standard of Review

Section 405(g) of the Social Security Act governs the standard of review in disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard, and (2) the Commissioner's factual findings are supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 401 (1971). To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. "Judicial

review is to be deferential without being so obsequious as to be meaningless." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

A claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). The commissioner applies a five-step sequential analysis to decide disability status. The claimant bears the burden of proof on the first four steps to establish that a disability exists. If successful, the burden shifts to the Commissioner, in step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 152 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts back to the claimant to show he is unable to perform the alternative work. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's final decision. *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000). Post hoc rationalizations for an agency decision are not to be considered by a reviewing court. *SEC v. Chenery,* 332 U.S. 194, 196 (1947).

## **Analysis**

Patel claims that the ALJ erred by: (1) finding that Patel's mental impairments were not severe and resulted in no work-related limitations; (b) failing to assign the appropriate weight to the treating physician's opinions regarding his physical impairment limitations; and (3) improperly evaluating Patel's credibility. As explained below, the Court agrees that remand is necessary based on the first two grounds, and finds it unnecessary to consider the third.

1.  **Patel's Mental Impairments**

The ALJ acknowledged that Patel had medically determinable mental impairments of depression and anxiety, but found they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." Dkt. 7-3, at 14. Patel challenges this finding, as well as the ALJ's related failure to include any mental limitations in her RFC determination, as unsupported by substantial evidence and inconsistent with agency regulations. The Court agrees.

Under agency regulations then in place,[1] mental impairments were evaluated under four broad functional areas known as the "paragraph B" criteria: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Dkt. 7-3 at 4. The degree of limitation in each category is based on a five point scale: None, mild, moderate, marked, or extreme. A rating of "none" or "mild" in all four areas will generally result in a conclusion that the impairment is not severe. *See* 20 C.F.R. § 404.1520a(d)(1).

The ALJ rated Patel's limitations in the first three categories as "mild", and the fourth as "none." Patel specifically challenges the ALJ's mild rating in the concentration, persistence or pace category, pointing to the consistent medical evidence to the contrary in the record. Dkt. 14, at 6-11. It is undisputed that Patel suffered from depression and anxiety, with accompanying symptoms such as anhedonia, appetite disturbance, sleep disturbance, decreased energy and fatigue, feelings of guilt or worthlessness, and difficulty concentrating or thinking. Patel consistently scored in the moderate anxiety

---
[1] The SSA updated its mental disability listings in 2017, and replaced the term "episodes of decompensation" with the term "adapt or manage oneself." 20 C.F.R. § 404.1520a(c) (3).

range and moderate depression range, regardless which set of standardized criteria were applied (e.g. DSM-V, Beck, ZUNG-AI, GAF). Patel was prescribed medication for these conditions. The mental health opinions from Patel's treating physician (Dr. Thakkar) as well as the state agency's examining psychologist (Dr. Fee), and non-examining psychologist (Dr. Wong), were unanimous --- Patel has moderate (not mild) limitations on his ability to maintain concentration, persistence, or pace.[2]

Curiously, the ALJ's opinion disregarded this undisputed medical evidence in reaching her conclusion that Patel had only a mild limitation in this area. Dkt. 7-3 at 14. Instead, she relied entirely on a selective review of Patel's daily activities, as reflected in a function report he submitted to the state agency. Dkt. 7-7 at 13-21. Taken as a whole, this report provides solid support for Patel's claim --- his daily activities consist of "sometime watch TV, rest, sleep;" he does not prepare his meals and cannot do house or yard work; he never goes shopping; the only time he goes outside is for doctor visits accompanied by someone else; he can pay attention only "sometimes;" and he does not finish what he starts. Dkt. 7-7. Yet the ALJ chose to ignore these limitations, and instead focused on Patel's acknowledged ability to read, watch TV, and drive a car:

> Mr. Patel is able to follow instructions and complete tasks once begun as evidenced by his activities of daily living. He reads and is able to follow television and movie plots, both of which require the ability to concentrate for extended periods of time. The undersigned notes that the task of driving demands the individual focus on multiple tasks at the same time, and process information from

---

[2] The only medical source opinion supporting a "mild" limitation on concentration, persistence, or pace was offered by the initial non-examining review of Dr. Robert White, who had reviewed only some of Patel's medical records. This opinion was later contradicted on reconsideration by agency non-examining psychologist Dr. Matthew Wong who, with the benefit of additional records, concluded that Patel had "moderate" restrictions in his ability to maintain concentration, persistence, or pace. Dkt. 7-4 at 19. Dr. Wong added that Patel was moderately limited in his ability to understand, remember, and carry out detailed instructions, to respond appropriately to criticism from supervisors, and to respond to changes in work setting. *Id*. at 22-24

5

> more than one source, attend to multiple elements of information, shift attention back and forth as needed, and continuously monitor information from the road scene while being able to scan the environment for potential hazards.

Dkt. 7-3 at 4.

In the first place, the ALJ's facile assumption that one who can read or watch television has "the ability to concentrate for extended periods of time" is unsupported by either this record or by common sense. Elsewhere on the form Patel expressly answered "No" to the question "Do you finish what you start? (For example, a conversation, chores, reading, watching a movie.)." Dkt. 7-7 at 19. Although Patel does not say (and was never asked) what he reads, this answer suggests nothing more in depth than Facebook posts or news headlines; nothing, that is, requiring any extended concentration at all. Nor is it reasonable to infer an ability to concentrate over time merely because one can turn on the television. Many two-year olds can stare at a screen and wield a remote control, and seniors with dementia often do the same. Concentrated attention span is another matter entirely.

As for the activity of driving, the ALJ ignored Patel's own testimony that he "rarely drives." Dkt. 7-3 at 17. The ALJ's extended discussion of "driving demands" might have some relevance for a cab driver or suburban commuter, but there is no evidence at all that it accurately describes Patel's driving activity. Patel testified at the hearing that he had not driven for two and a half months, and that his wife has to take him to the doctor and hospital. Dkt. 7-3, at 49. Obviously, any inference about Patel's ability to concentrate based on his possession of a driver's license is sheer speculation.

6

In short, the activities of daily living cited by the ALJ offer no support for her finding that Patel's mental limitations are non-severe, especially in light of the compelling medical and opinion evidence to the contrary. This error is not harmless, because the ALJ's failure to include any mental limitations in the RFC led directly to her conclusion that Patel could perform his past relevant work and hence was not disabled.

**2.    Treating Physician's Opinion**

The ALJ assigned little weight to the opinion of the treating physician, Dr. Thakkar, regarding Patel's physical limitations. Dr. Thakkar described those limitations as follows:

- Sit for 5 hours with breaks every 2 hours;

- Stand less than 15 minutes and walk less than 5-6 minutes;

- No work around heights, moving machinery, or with marked changes in temperature or humidity;

- No lifting over 5 pounds;

- No driving automotive equipment;

- No exposure to dust, fumes, or gases;

- No repetitive movements with feet;

- Unscheduled breaks due to fatigue;

- Absent from work more than 4 times a month.

Dkt, 7-9, at 63-65; Dkt. 7-11, at 56.    Such limitations are plainly more restrictive than those found by the ALJ, who found Patel capable of performing light work.

In general, "the opinion of the treating physician is afforded controlling weight in the ALJ's decision if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (2000). The ALJ may discount, or even disregard entirely, the opinion of a treating physician only for good cause. *Brown v. Apfel*, 192 F3d 492, 500 (5th Cir. 1999).

The ALJ must consider several factors before declining to give the treating physician's opinion controlling weight: the physicians length of treatment of the claimant; the physicians frequency of examination; the nature and extent of the treatment relationship; the support of the physician's opinion afforded by the medical evidence of record; the consistency of the opinion with the record as a whole; and the specialization of the treating physician. 20 C.F.R. § 404.1527(d)(2).

The ALJ acknowledged Dr. Thakkar's long time treatment of Patel, but afforded his opinion little weight due to the "medical record show[ing] the claimant is more capable than opined by Dr. Thakkar." The ALJ's support for this conclusion rested on three grounds: (1) a physical exam note that claimant was "healthy appearing" and "ambulated normally;" (2) Dr. Thakkar's opinion was not consistent with his own treatment notes and the consultative examination; and (3) there was no indication that medical treatment would cause Patel to miss work four days a month. Dkt. 7-3, at 23.

The ALJ's stated reasons do not withstand scrutiny. First of all, the brief observation cited in the exam note was cherry-picked from a lengthier report describing substantial physical problems, including shortness of breath when walking, muscle

8

weakness and swelling in the extremities when he "stands too much", and fatigue causing him to stay in a chair or bed most of the time. Dkt. 7-12, at 9. Dr. Thakkar's treatment notes for other visits over several years consistently reflect these and other problems. Considered in isolation, the anodyne observation that on one occasion the patient was "healthy appearing" and "ambulated normally" is hardly sufficient to cast aside all the other treatment notes and medical opinion evidence pointing in the claimant's favor.

The second ground is no more convincing. The consultative examination was performed by Dr. Syed (Dkt. 7-10), and the ALJ never assigned any weight to his opinion. More importantly, Dr. Syed never opined on the specific physical limitations listed by Dr. Thakkar, and nothing in his report directly or indirectly contradicts Dr. Thakkar's opinion on those limitations. To the contrary, Dr. Syed observed that Patel's general appearance was "anxious ... trembling, somewhat ill appearing," and that diabetic neuropathy predisposed him to "gait instability and falls." Dkt. 7-10, at 43-45.

Finally, the ALJ misread Dr. Thakkar's opinion to state that Patel's treatment alone would cause him to miss work four days a month, and rejected it because the medical record did not show doctor visits of that frequency. Dkt. 7-3, at 23. But Dr. Thakker actually opined that Patel's "impairments *or* treatment" would cause the absenteeism, not treatment alone. Dkt. 7-11, at 56. Thus, this ground for rejecting the treating physician's considered medical opinions is no more substantial than the other two.

The ALJ's decision may be affirmed only on the grounds stated by the ALJ. *Newton,* 209 F.3d at 455. The ALJ here has not offered credible reasons for rejecting the treating physician's medical opinions and relying instead upon non-examining sources. Accordingly, the ALJ violated the duty to weigh a treating source opinion in accordance with agency regulations and rulings, and to reject or discount those opinions only for good cause. *Brown v. Apfel*, 192 F3d 492, 500 (5th Cir. 1999).

## Conclusion

For these reasons, Patel's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. A separate judgment will be entered under sentence four of 42 U.S.C. § 405(g), reversing the Commissioner's final decision and remanding for further administrative proceedings consistent with this opinion.

Signed at Houston, Texas on September 19, 2017.

Stephen Wm Smith
United States Magistrate Judge